UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH FARINA<br><br>    *Defendant*. | Case No. 1:25-cr-232-RCL |

## MEMORANDUM OPINION

On August 12, 2025, a federal grand jury returned an indictment against Defendant Joseph Farina with one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).  *See* Indictment, ECF No. 11.  On August 4, 2025, the government filed a memorandum in support of Defendant's pre-trial detention, arguing that Defendant posed an "unmitigable risk to community safety." *See* Mem. in Support of Pre-Trial Detention, ECF No. 7, at 1.  On September 9, 2025, Defendant filed a motion for bond and pretrial release, arguing that the government could not meet its burden to show that "no conditions of release" could ensure the safety of the community.  *See* Def.'s Mot. Supp. Pre-Trial Release ("Def.'s Mot."), ECF No. 19.  For the reasons described below, Defendant's motion is **DENIED**.

### I.  FACTUAL & PROCEDURAL BACKGROUND

Defendant currently faces one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).  Indictment, ECF No. 11.  The indictment alleges that on or about July 14, 2025, Defendant "did knowingly distribute one or more visual depictions" of "a minor engaging in sexually explicit conduct." *Id.*

Defendant was arrested on July 30, 2025, ECF No. 3, and made an initial appearance before Magistrate Judge Faruqui, who ordered that Defendant be temporarily detained, *see* Minute Entry

(Aug. 30, 2025). Two detention hearings were later held before this Court on September 4, 2025, and September 10, 2025, at which time the Court took the matter under advisement.

The charges against Defendant stem from the use of a Signal account to distribute child sexual abuse material ("CSAM") to an undercover officer. Mem. in Support of Pre-Trial Detention, ECF No. 7, at 1–2. Specifically, "after expressing his interest in watching CSAM with others and joining groups for that express purpose," Defendant sent the officer a video of himself engaging in sexual activity while watching another video of other adult males engage in sexual activity "over a nude prepubescent child." *Id.*

Defendant does "not contest[] that the alleged offense is a serious one" but argues that the cases the government relies on in support of denying release involve "allegations far more serious and egregious" than a single count of distribution. *See* Def.'s Mot., at 5–6 (discussing *United States v. Galarza*, No. 18-MJ-146, 2019 WL 2028710 (D.D.C. May 8, 2019); *United States v. Nickelson*, No. 18-MJ-102, 2018 WL 4964506 (D.D.C. Oct. 15, 2018); *United States v. Blanchard*, No. 18-MJ-101, 2018 WL 4964505 (D.D.C. Oct. 15, 2018)). Defendant argues that those cases involved allegations such as "hands-on abuse," "leadership in online groups trafficking in CSAM," and distribution to a "broad network of users," while his case involves only an allegation of a single video sent in a one-on-one exchange. *Id.* at 6–7.

However, at the September 10 detention hearing, the government proffered evidence of approximately 330 additional videos and 1,000 images of CSAM on Defendant's phone. Rough Transcript of Hearing (Sep. 10, 2025) at 2:14–3:1. "Numerous" of those videos involved "infant aged males" and "several" depicted adult males performing sexual acts while watching CSAM. *Id.* at 3:1–7. The government also proffered evidence of Telegram chat conversations found on Defendant's phone "expressing a like-mindedness" with other individuals about a shared interest

2

in child sexual exploitation and a desire to "watch perve porn" with others in this community. *Id.* at 3:12–17. In the Telegram conversations, Defendant describes his age preference as "five to 13 years old" and describes himself as a "proud, white, expletive pedophile." *Id.* at 3:18–20. The government characterized Defendant's conduct as escalating over time, moving from chats about CSAM, to an admission that he "couldn't stop thinking about it," to "proactive conduct"— culminating in Defendant agreeing to meet up with the UC. *Id.* at 3:21–4:8.

In response to the government's proffer, Defendant contends that these additional facts do not change "the nature and circumstances of the offense" and that the quantity of recovered CSAM does not speak to Defendant's dangerousness or suitability for pre-trial release. *Id.* at 4:21–5:10.

## II.     LEGAL STANDARDS

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The "provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception." *Id.* The Act states that a court shall order the detention of a defendant pending trial only if the court "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] . . . and the safety . . . of the community." 18 U.S.C. § 3142(a), (e). This finding must be supported by "clear and convincing evidence." *Id.* § 3142(f)(2)(B). "Even if the defendant does not pose a flight risk, danger to the community alone is sufficient reason to order pretrial detention." *Blanchard*, 2018 WL 4964505, at *2 (citing *Salerno*, 481 U.S. at 755). Only Defendant's dangerousness is at issue in this case.

When there is probable cause to believe that the defendant committed an offense involving a minor victim under 18 U.S.C. § 2252(a)(2), as here, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure . . . the safety of the community." 18 U.S.C. § 3142(e)(3). Once the rebuttable presumption is triggered, "the defendant bears the

3

burden of production 'to offer some credible evidence contrary to the statutory presumption.'" *Blanchard*, 2018 WL 4964505, at *4 (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)). "The defendant may carry this burden by coming forward with some evidence that he will not . . . endanger the community if released." *United States v. Garner*, No. CR 24-533, 2025 WL 1575848, at *3 (D.D.C. Mar. 11, 2025) (citation omitted). If the defendant rebuts the presumption, "the presumption is not erased but rather remains in the case as an evidentiary finding militating against release to be weighed along with other evidence." *Id.* (citation omitted).

In determining whether there are conditions of release that will assure the appearance of the defendant and the safety of the community, the court looks to four factors under § 3142(g). They are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### III.    DISCUSSION

Defendant does not contest that the rebuttable presumption in § 3142(e)(3)(E) is triggered. *See* Def.'s Mot. at 3 ("[S]ome offenses, like this one, contain a rebuttable presumption of detention."). Rather, Defendant suggests that the presumption is rebutted by his stellar professional and academic credentials, as well as the team of custodians he proposes to supervise his release. *See id.* Defendant even takes the unusual step of presenting the Court with numerous exceptional letters in support of his pre-trial release. ECF No. 19–1. Defendant's background and his proposed release conditions are considered as part of the § 3142(g) factors below. Ultimately, however, "the Court need not decide whether Defendant adequately rebutted the § 3142(e)(3)(E) presumption" because "the Court concludes that even if Defendant has borne his burden of production . . . the Government has shown by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of the community if

4

Defendant were to be released." *Garner*, 2025 WL 1575848, at *3. On the current record, the § 3142(g) factors overwhelmingly favor pre-trial detention.

1. **Nature and Circumstances of the Charged Offense**

The first factor asks the Court to consider "the nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim." 18 U.S.C. § 3142(g)(1). This factor weighs in favor of detention as the charged offense is extremely serious, involving the distribution of CSAM material depicting the sexual exploitation of a pre-pubescent child. "Child pornography depicts pictorial evidence of physical sex abuse against and exploitation of children and the production and distribution of such contraband carries a multitude of harms." *Blanchard*, 2018 WL 4964505, at *4. That is true even of mere possession of CSAM material, and here Defendant is charged with the greater harm of distribution.

The nature of the charged offense is very serious in itself, and the circumstances surrounding the offense only add to its seriousness. Those circumstances include Defendant's membership in online communities that encourage the sharing of CSAM materials, his interest in "going deeper" into these communities, and his stated desire to potentially meet up with a sexually abused minor in the future. The circumstances surrounding the charged offense do not paint a picture of isolated behavior, and therefore favor detention.

2. **Weight of Evidence Against the Defendant**

The second factor asks the Court to consider "the weight of the evidence" against the defendant. 18 U.S.C. § 3142(g)(2). Here, the government's evidence against Defendant is very strong. The government supports the CSAM distribution charge with Defendant's own Signal messages, a video Defendant sent of himself performing sexual acts while watching a CSAM video on a tablet, and Defendant's own attempt to meet up with an undercover officer to watch CSAM

5

materials together. In addition, the government's proffer at the second detention hearing revealed that hundreds of additional CSAM videos and thousands of CSAM images have since been recovered from Defendant's phone, many of which depict infant males. The substantial weight of the evidence, therefore, favors detention.

### 3. Defendant's Personal History and Characteristics

The third factor asks the Court to consider "the history and characteristics" of the defendant, including the defendant's "character," "community ties," and "criminal history." 18 U.S.C. § 3142(g)(3). Defendant points to an exceptional record of academic achievement and community service, as well as a lack of any criminal history. *See* Def.'s Mot., at 8–10 (noting that Defendant graduated from Georgetown University with *summa cum laude* honors, was awarded grants from the NASA DC Space Consortium, and is enrolled in Duke University's Master of Science program in Medical Physics). Defendant also submitted multiple letters written by family and friends in support of his pre-trial release, all of which paint a portrait of an intelligent and accomplished young man. *See* ECF No. 19-1.

However, these characteristics, though impressive, do not bear on the risk the Defendant poses to the community. Nor do they explain what appears to be a growing interest in consuming CSAM materials. In his Signal messages, Defendant states that he wants to try "going deeper" and that "[t]he urges don't go away just bc I want them to ha." Mem. in Support of Pre-Trial Detention, ECF No. 7, at 13. In other messages, Defendant states an interest in performing sexual acts on "a little baby" and meeting up with a fictional child that the undercover agent purported to have access to. *Id.* at 13–14. Defendant's impressive background has not previously mitigated his desire to consume CSAM materials, nor could it reasonably be expected to do so if Defendant were released.

6

Defendant proposes that he be released into the custody of a group of third-party custodians, which include his mother, father, and other family members. *See* Def.'s Mot. at 11–13. At least one of those family members wrote a letter in support of Defendant's release. The letters do not, however, suggest that those closest to Defendant are familiar with his consumption of CSAM materials, nor that they are able to prevent Defendant's continued access to them in the future. At the second detention hearing, the government argued that allowing Defendant's family members to serve as his custodians "would be entrusting the community's safety" to individuals "who aren't trained and wouldn't be." Rough Transcript of Hearing (Sep. 10, 2025) at 4:9–14. The government is rightfully concerned that these family members "would not be able to sufficiently mitigate the risk that this offender poses given what we know about his conduct and the trajectory that he appears to be on." *Id.* The Court agrees. Though Defendant and those that know him have painted an impressive image of a successful student and community member, these characteristics do not bear on the danger that Defendant currently poses to the community. They therefore do not favor release.

### 4. Nature and Seriousness of the Danger Defendant's Release Poses

The final factor asks the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant]'s release." 18 U.S.C. § 3142(g)(4). This factor weighs in favor of detention because "the nature of the crime charged – distribution of child pornography – weighs heavily against release." *Blanchard*, 2018 WL 4964505, at *6. This danger is reflected in the fact that distribution of CSAM materials falls into the category of cases for which there is a statutory presumption of detention. *See Galarza*, 2019 WL 2028710, at *7 ("These significant harms and dangers animated the Congress to create the statutory presumption of detention in these cases.") As previously stated, neither the letters that

Defendant has submitted, nor Defendant's proposed custodial plan for release, sufficiently addresses the Court's concern that Defendant poses a significant risk to the community by continued consumption and distribution of CSAM materials. Because the danger posed is so great, the Court finds that no condition or combination of conditions would reasonably keep the community safe were Defendant to be released.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds clear and convincing evidence that Defendant's pre-trial release would pose an unreasonable danger to the community, and that no condition or combination of conditions can be imposed that would reasonably ensure the safety of the community were Defendant to be released. As such, Defendant's Motion for Bond and Pretrial Release is **DENIED**. The Defendant shall remain in the custody of the Attorney General pending a final disposition in this case.

A separate **ORDER** consistent with this Memorandum Opinion shall issue.

Date: 9-16-25

Royce C. Lamberth
United States District Judge